IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND GENERAL ELECTRIC COMPANY,

Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,

Defendants.

No. 3:16-cv-00495-HZ

OPINION & ORDER

David Bledsoe
Joanna Perini-Abbott
Perkins Coie, LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209

Attorneys for Plaintiff

Jan Sokol
John Spencer Stewart
Mario Nicholas
Thomas Larkin
Stewart Sokol & Larkin, LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Portland General Electric ("PGE") brings this action against Defendants Liberty Mutual Insurance Company and Zurich American Insurance Company, (collectively, "Sureties"). PGE brings three claims: (1) breach of performance bond; (2) declaratory judgment; and (3) bad faith. Compl. 25-26, ECF 1. PGE alleges damages in excess of two hundred million dollars. Id. at 27.

The parties disagree about whether their dispute should be resolved in this Court or in arbitration. Sureties move to stay the case pending resolution of an arbitration proceeding currently pending before the International Chamber of Commerce ("ICC"). PGE opposes the Sureties' motion and, in addition, moves to preliminarily enjoin Sureties from pursuing ICC arbitration. Because the parties never agreed to arbitrate this dispute, the Court denies Sureties' motion for a stay and grants PGE's motion for a preliminary injunction.

## BACKGROUND

### I. The EPC Agreement

On June 3, 2013, PGE and Contractor Abeinsa Companies[1] ("Contractor") entered into a Turnkey Engineering, Procurement, & Construction Agreement ("EPC Contract") for Contractor to construct a power generation project (the "Carty Project"). Compl. ¶ 8. The EPC Contract provides that it "shall be governed by, and construed, interpreted and enforced in accordance with, the substantive law of the State of Oregon[.]" EPC Contract ¶ 40.18, ECF 30. It further states that the parties "irrevocably consent to the exclusive jurisdiction of any U.S. federal court with jurisdiction over Oregon." Id. The EPC Contract does not contain an arbitration provision.

[1] "Contractor" consists of Abeinsa EPC, LLC; Abener Construction Services, LLC; Teyma Construction USA, LLC; and Abeinsa Abener Teyma General Partnership. Compl. ¶ 7, ECF 1.

## II. The Performance Bond

In connection with the EPC Contract, PGE required Contractor to obtain a performance bond from Sureties, for the benefit of PGE, guaranteeing performance of the EPC Contract. Id. at ¶ 50. On June 4, 2013, Sureties executed and posted a Performance Bond on behalf of Contractor, as principal, and in favor of PGE, as owner/obligee. Performance Bond ("Bond"), ECF 30-1. The stated amount of the Bond was $145,611,779.60. Id.

The Bond states that Contractor and each Surety, jointly and severally, bind themselves to PGE for the performance of the EPC Contract. Id. at ¶ 1. "[I]f the Contractor performs the [EPC] Contract, the Surety and the Contractor shall have no obligation under this Bond . . . ." Id. at ¶ 2. On the other hand, Sureties' obligation under the Bond arises under the following conditions: PGE notifying Contractor and Sureties that PGE is considering declaring a Contractor default; PGE declaring a Contractor Default and formally terminating Contractor's right to complete the EPC Contract and notifying Sureties; and PGE agreeing to pay the Balance of the Contract Price if the work continues under Section 4.1, 4.2, or 4.3 of the Bond. Id. at ¶ 3.

The Bond provides that when PGE has satisfied the conditions stated above, Sureties must take one of several actions. Sureties may arrange for Contractor, with consent of PGE, to perform and complete the EPC Contract. Id. at ¶ 4.1. Sureties may undertake to perform and complete the EPC Contract through their agents or independent contractors, who must, in either case, be acceptable to PGE. Id. at ¶ 4.2. Sureties may, in continuous consultation with PGE, obtain bids or negotiated proposals from qualified contractors acceptable to PGE for a contract acceptable to PGE for performance and completion of the EPC Contract. Id. at ¶ 4.3. Sureties may waive their right to proceed and determine the amount for which they may be liable to PGE and, as soon as practicable after the amount is determined, tender payment therefor to PGE. Id. at

¶ 4.4.1. Or, finally, Sureties may waive their right to proceed and deny liability in whole or in part and notify PGE citing reasons therefor. Id. at ¶ 4.4.2. If Sureties do not proceed as provided in the Bond with reasonable promptness, they "shall be deemed to be in default on this Bond seven (7) days after receipt of an additional written notice from [PGE] to the Suret[ies.]" Id. at ¶ 5.

The Bond provides for the following dispute resolution process:

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located, and in any court(s) to which the Parties to the [EPC] Contract have agreed will have jurisdiction over disputes thereunder. Each of the Parties hereby accepts and consents to, generally and unconditionally, the jurisdiction of the aforesaid courts and appellate courts from any appeal thereof.

Id. at ¶ 9 (emphasis added). There is no agreement between PGE and Sureties to submit any proceeding to arbitration.

## III. The Guaranty

PGE also required Contractor to obtain a written guarantee from Abengoa, in favor of PGE, guaranteeing performance of the EPC Contract. On or about July 30, 2013, PGE and Abengoa entered into an agreement (the "Guaranty") under which Abengoa guaranteed PGE that if Contractor failed to perform its duties under the EPC Contract, then PGE could seek recourse against Abengoa according to the terms of the Guaranty. Sokol Decl., Ex. B (Guaranty), ECF 14-2.

The Guaranty between Abengoa and PGE states that if Contractor fails to perform under the EPC Agreement, Abengoa will "perform or cause to be performed such duty, obligation, warranty, guarantee or responsibility" within seven days of receiving PGE's "written notice of such failure and demand." Id. at 1.

The Guaranty also contains a dispute resolution provision, Article 10, which states that:

> [I]n the event any dispute arises between the Parties in connection with this Guaranty, including without limitation disputes regarding the breach, termination or validity hereof and any claims by [PGE] that [Abengoa] has failed to comply with some or all of its obligations under this Guaranty (a "Dispute")" then either PGE or Abengoa may refer the dispute to final and binding arbitration in accordance with the procedures set forth in Section 10(b) of the Guaranty.

Id. ¶ 10(a). Section 10(b) provides that the arbitration shall be conducted in Portland, Oregon "pursuant to the Rules of Arbitration of the International Chamber of Commerce[.]" Id. ¶ 10(b). The arbitration will be administered by the ICC. Id. "The arbitrator(s) shall resolve all questions of state law by application of the substantive law of Oregon, except that interpretation and enforcement of this arbitration procedure shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.)[.]" Id.

**IV. Contractor Default and Sureties' Response**

On December 18, 2015, PGE sent Contractor a notice of contractor event of default and termination under the EPC Agreement. Compl. ¶ 117.The termination notice informed Contractor that it was in material default under various articles of the EPC Contract. Id. at ¶ 118. The same day, PGE sent a letter to Sureties, informing them that PGE had declared a contractor default and formally terminated Contractor's right to complete the EPC Contract. Id. at ¶ 117.

On March 9, 2016, Sureties sent PGE a letter stating their election to deny liability to PGE in whole, under Section 4.4.2 of the Performance Bond. Id. at ¶¶ 131-32. In response, PGE filed the present action against Sureties.

**V. The Arbitration**

PGE has not asserted any claims against Abengoa. However, on December 31, 2015, Abengoa submitted a request for arbitration with the ICC. Gardiner Decl. Ex. 1, ECF 18-1. In the request for arbitration, Abengoa identifies itself as the Claimant and PGE as the Respondent. Id. at 2. Abengoa identifies Contractor as "Impleaded Parties." Id. On March 2, 2016, Abengoa filed

a request for joinder of Sureties as "Impleaded/Joined Parties." Gardiner Decl. Ex. 2, ECF 18-2. Abengoa alleges that PGE wrongfully terminated the EPC Contract and, thus, Sureties were not liable to PGE under the Bond. Id.

PGE contends that Abengoa is not entitled to request arbitration at this point because PGE has not asserted any claim against Abengoa under the Guaranty. The Guaranty provides that, if for any reason Contractor fails to perform under the EPC Agreement, Abengoa will, "within seven (7) days of [Abengoa's] receipt of written notice of such failure and demand by [PGE], perform or cause to be performed such duty, obligation, warranty, guarantee of responsibility in accordance with the EPC Agreement . . . ." Guaranty ¶ 1(b). PGE has not provided any written notice of failure and demand to Abengoa.

For now, the arbitration is proceeding at the ICC. Gardiner Decl. Ex. 3, ECF 27-3. Two of the three necessary arbitrators have been selected; the third arbitrator (the President of the Tribunal) has not yet been selected. Id. Once the tribunal is constituted, the parties will be able to seek resolution as to whether the arbitration is properly brought by Abengoa. Gardiner Decl. ¶¶ 27-28.

## STANDARDS

### I. Motion to Stay Pending Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, written agreements to arbitrate disputes that arise out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a court finds the issue involved in a federal action is referable to arbitration under a written arbitration agreement, the court shall, "on application of one of the parties, stay the trial of the action until such arbitration has been completed in

accordance with the terms of the agreement provided the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

**II. Preliminary Injunction**

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The plaintiff "must establish that irreparable harm is likely, not just possible[.]" Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id.

Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four required elements set forth above. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) (a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion") (quoting Mazurek, 520 U.S. at 972) (emphasis in original).

**DISCUSSION**

Sureties argue that, because PGE and Sureties are parties to the ICC arbitration initiated by Abengoa under the Guaranty, the Court is required to stay this case while arbitration is pending. Alternatively, Sureties argue that the Court should stay the case pursuant to its discretionary power to effectively manage its docket. PGE responds that the motion to stay should be denied because the parties never entered into a written agreement to arbitrate and there

is a general rule against staying non-arbitrable claims. Furthermore, PGE asks for a preliminary injunction enjoining Sureties from pursuing ICC arbitration.

The Court concludes it is not required to stay the case, and it declines to exercise its discretion to impose a stay. Furthermore, the Court enjoins Sureties from participating in Abengoa's ICC arbitration.

## I. Mandatory Stay

Sureties contend that Section 3 of the FAA requires the Court to stay this action because Abengoa properly initiated the ICC Arbitration against PGE, and Abengoa properly joined or impleaded Sureties as parties to the proceeding. Notwithstanding Sureties' efforts to complicate the question in this case, the answer is simple—because no valid agreement to arbitrate exists between PGE and Sureties, the Court is not required to stay the case pending resolution of arbitration.

Under certain circumstances, the FAA requires a district court to stay a suit pending resolution of arbitration. 9 U.S.C. § 3. "The court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" Id.; Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) ("By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'") (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron, 2017 F.3d at 1130;

see also Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 564 (9th Cir. 2014). If so, the court must compel arbitration. Id. at 1134.

The mandatory stay provision of the FAA, however, applies only to parties to the arbitration agreement, "[f]or arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). "Although not expressly so limited, section 3 assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, as must be the person sought to be stayed." IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 529 (7th Cir. 1996). See also ATSA of California, Inc. v. Cont'l Ins. Co., 702 F.2d 172, 176 (9th Cir. 1983), amended, 754 F.2d 1394 (9th Cir. 1985) (declining to order a party to submit to arbitration where the contract did not contain an arbitration provision). "That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract)." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).

In their briefing, Sureties contend that, because there is an arbitration agreement in the Guaranty and because Abengoa has impleaded Sureties in its arbitration, Sureties are entitled to proceed in arbitration. At oral argument, Sureties refined their argument and vigorously argued that they are a party not only to the Bond, but also to the EPC Contract and the Guaranty. In short, Sureties' position is that the Bond incorporates all of the terms of the EPC Contract and the EPC Contract, in turn, incorporates many exhibits, including the Guaranty and its arbitration provision. Therefore, according to Sureties, their dispute with PGE is governed by the Guaranty's arbitration clause.

Sureties rely on several specific parts of the Bond, the EPC Contract, and the Guaranty in support of their argument. The EPC Contract incorporates many exhibits into the Contract, including the Guaranty and the Bond. EPC Contract at 21. (stating that "[t]his Agreement includes the following Exhibits annexed hereto" and listing the Guaranty and the Bond). The EPC Contract also contains a "Disputes" section which provides that, if PGE and Contractor are unable to resolve their differences through mediation, "each Party shall have the right to take whatever legal actions that they may choose." Id. at 113. Furthermore, the EPC Contract provides that "[i]n any litigation arising out of this Agreement, including arbitration," the prevailing party is entitled to recover expenses and attorney's fees. Id. at 126.

The Bond incorporates by reference the EPC Contract. Bond at 1. The Bond also states that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located, and in any court(s) to which the Parties to the Construction Contract have agreed will have jurisdiction over disputes thereunder." Id. at 2-3.

The Guaranty provides that Abengoa may assert "all of the rights and defenses that Contractor has under the EPC Agreement." Sokol Decl. Ex. B, ("Guaranty"), ¶ 4, ECF 14-2. The Guaranty also contains a "dispute resolution" provision which allows PGE or Abengoa to refer a dispute between them to arbitration. Id. at ¶ 10. Once the arbitration is commenced, "either Party may implead any other person or entity (with such person or entity's consent) in, and/or raise any claim against, any other person or entity provided such claim arises out of or in connection with an agreement with a Subcontractor or this Guaranty." Id. at ¶ 10(vii).

Whether or not the Court is required to stay the present case hinges upon whether a valid agreement to arbitrate exists between PGE and Sureties. Chiron, 2017 F.3d at 1130 (expressly

limiting the Court's role under the FAA to first determining whether a valid agreement to arbitrate exists). To resolve the issue, the Court applies general, state-law principles of contract interpretation. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 1049 (9th Cir. 2001); Old Navy, LLC v. Ctr. Developments Oreg., LLC, No. CIV. 3:11-472-KI, 2012 WL 2192284, at *4 (D. Or. June 13, 2012) ("Under Oregon law, the interpretation of a contract is a question of law for the court.) (citing Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992)).

In Yogman v. Parrott, the Oregon Supreme Court established a three-step process for interpreting a disputed contractual provision. 325 Or. 358, 937 P.2d 1019 (1997). The court's goal is to give effect to the intention of the contracting parties. Anderson v. Jensen Racing, Inc., 324 Or. 570, 575–76, 931 P.2d 763 (1997); Or. Rev. Stat. § (O.R.S.) 42.240 (in the construction of a written instrument the intention of the parties is to be pursued if possible). First, the court must determine whether, as a matter of law, the relevant provision is ambiguous. Id. at 361, 937 P.2d 1019. A contractual provision is ambiguous if it can "reasonably be given more than one plausible interpretation." Williams v. RJ Reynolds Tobacco Co., 351 Or. 368, 379, 271 P.3d 103 (2011). "The court must, if possible, construe the contract so as to give effect to all of its provisions." Id. Further, when construing a contract provision, the court is "not to insert what has been omitted, or to omit what has been inserted." O.R.S. 42.230; see also Yogman, 325 Or. at 361, 937 P.2d 1019 (citing O.R.S. 42.230 at step one of the analysis). The analysis ends if the meaning of the provision is clear from the text and context of the contract. Williams, 351 Or. at 379–80, 271 P.3d 103. The court then applies the contractual term to the facts. Yogman, 325 Or. at 361, 937 P.2d 1019.

Sureties' argument requires a bit of mental gymnastics to connect the dots. In essence, they argue that (1) Abengoa may assert all of Contractor's rights under the EPC Contract through arbitration because the Guaranty allows for arbitration, (2) Abengoa has properly impleaded Sureties into the ICC arbitration, pursuant to the Guaranty ¶ 10(vii), (3) the Bond between Sureties and PGE incorporates by reference the EPC Contract and, therefore, (4) Sureties can properly proceed as impleaded parties in the arbitration because the Bond does not require disputes between Sureties and PGE to proceed in court, but rather, only states that a dispute under the Bond may be instituted in court. See Bond at 1.

The Court disagrees with Sureties' proposed analysis of the interplay of the Bond, Guaranty, and EPC Contract. The Bond clearly provides that any proceeding under the Bond shall be brought in court, not arbitration. Sureties contend that the phrase "any proceeding…may be instituted in any court" suggests that any proceeding may be instituted in court and may also be instituted in arbitration or in any other forum. Such interpretation, however, is not reasonable. If the parties' intent was that any proceeding under the Bond could be instituted anywhere, then there would be no need to specify in an independent clause in the Bond that proceedings could be instituted in court. Sureties' proposed interpretation renders the clause meaningless and the Court declines to produce such a result. Instead, the Court reads the clause to mean that it is not obligatory that a proceeding be instituted, but a proceeding may be instituted and, if it is, it must be instituted in court.

As to the fact that the Guaranty contains an arbitration provision and the EPC Contract contains a "Costs and Attorney Fees" section that references arbitration, the specific dispute resolution procedure in the Bond controls the relationship between the parties to the Bond—Sureties and PGE. See ORS § 42.240 ("In the construction of an instrument the intention of the

parties is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it.”).

In sum, because a valid agreement to arbitrate does not exist between PGE and Sureties, the FAA’s mandatory stay provision is not triggered.[2] Accordingly, the Court is not required to refer the case to arbitration.

## II. Discretionary Stay

Sureties argue, in the alternative, that this Court should stay the present action pursuant to its discretionary power to effectively manage its docket. The Court disagrees.

The Supreme Court has held that “it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.” Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 n. 23 (1983). “How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.” Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).

Sureties contend that issues of judicial economy, consistency, and the policy favoring arbitration compel the Court to stay this action. While the Court readily admits that such issues

[2] Sureties also contend in one of their briefs that the Court should compel PGE to arbitrate under the theory of equitable estoppel. Defs.’ Opp. 9, ECF 23. Whether to apply estoppel in the arbitration context is a discretionary, fact-intensive decision, Legacy Wireless Servs., Inc. v. Human Capital, L.L.C., 314 F. Supp. 2d 1045, 1055 (D. Or. 2004), and Ninth Circuit decisions have made clear that the doctrine is a narrow one. See, e.g., Murphy v. DirecTV, Inc., 724 F.3d 1218, 1229 (9th Cir. 2013) (“Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined.”); Rajagopalan v. NoteWorld, LLC, 718 F.3d 844, 847 (9th Cir. 2013) (“We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here.”). “Equitable estoppel ‘precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.’” Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1047 (9th Cir. 2009). For the reasons explained in connection with the denial of Sureties’ motion for a mandatory stay, equitable estoppel is not applicable in this case.

are important considerations, they are outweighed by PGE's right to have its day in court on its claims, which are not subject to any arbitration provision. Furthermore, judicial economy will not necessarily be served by granting a stay. The pending arbitration proceeding is still at its beginning stages. The ICC has not yet compiled a full panel of arbitrators. Gardiner Ex. 3, ECF 27-3. Once that panel is assembled, then it will decide whether the case was properly brought by Abengoa in arbitration.

When faced with a similar issue, the District Court of the District of Columbia explained:

> It is unclear how long the arbitration proceeding will take to complete. Postponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely judicial resolution of matters before the federal courts. Allowing a case to languish for years on this Court's docket would not serve the interest of this Court or the parties involved.

DSMC, Inc. v. Convera Corp., 273 F. Supp. 2d 14, 31 (D.D.C. 2002). As in DSMC, this Court does not find that judicial economy would be served by staying this case.

Sureties cite a line of factually inapposite cases involving the Miller Act, 40 U.S.C. § 3133, in which courts held that judicial economy weighed in favor of granting a discretionary stay of a case between a surety and subcontractor until the underlying liability of the general contractor to the subcontractor was resolved in arbitration. See Defs.' Mot. 17, ECF 13. In each of the cases, the plaintiff subcontractor brought an action against a surety despite the absence of an agreement between the plaintiff and the surety. See, e.g., U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd., 750 F.2d 1422 (9th Cir. 1985); U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co., 672 F. Supp. 2d 92 (D.D.C. 2009); Souza v. Great Am. Ins. Co., No. 13-cv-03361-JCS, 2013 U.S. Dist. LEXIS 144913 (N.D. Cal. Oct. 7, 2013). In addition, each plaintiff subcontractor had an arbitration agreement with the contractor. Id. Because neither of these facts is present here, the Court is not persuaded by the other courts' reasoning.

As to the potential for inconsistent results, the Court acknowledges that its decision creates that possibility as to the determination of whether PGE properly terminated its contract with Contractor. In other words, the conclusion as to whether the EPC Contract was properly terminated may be different in this Court from the ICC arbitrators' conclusion. However, as the Supreme Court has explained, "that misfortune . . . occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Moses H. Cone, 460 U.S. at 20. In sum, the Court declines to exercise its discretion to stay the case.

**III. Preliminary injunction**

Sureties acknowledge that the Court's decisions on whether to stay the case and whether to issue an injunction are "two sides of the coin." Transcript of Oral Argument at 3, ECF 31. Incorporating the Court's conclusions above, the Court finds that PGE has met its burden of showing it is entitled to a preliminary injunction to enjoin Sureties from pursing ICC arbitration.

A district court may enjoin arbitration proceedings that are not governed by a valid and binding arbitration agreement. See Textile Unlimited, Inc. v. ABMH & Co., 240 F.3d 781, 786 (9th Cir. 2001) (applying the preliminary injunction requirements to assess plaintiff's motion to enjoin arbitration). PGE is likely to succeed on the merits of this case because, as discussed above, there was never an agreement between the parties to arbitrate PGE's claims.

As to irreparable harm, although the Ninth Circuit apparently has not addressed the issue explicitly, it has indicated that irreparable injury presumptively would exist if a party is required to expend resources participating in an arbitration in which it has no duty to participate. See

LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63, 849 F.2d 1236, 1241 n. 3 (1988) ("Finally, Local 63 contends that declaratory and injunctive relief were inappropriate in this case because Consolidators did not show that further arbitration would have caused irreparable harm or that there was no adequate remedy at law. Consolidators was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate."). Many other courts have also held that "[f]orcing a party to submit to arbitration, when it did not agree to do so, constitutes *per se* irreparable harm." Ingram Micro Inc. v. Signeo Int'l, Ltd., No. SACV 13-1934-DOC ANX, 2014 WL 3721197, at *4 (C.D. Cal. July 22, 2014) (citing Paine Webber, Inc. v. Hartman, 921 F.2d 507, 515 (3d Cir. 1990) (holding that per se irreparable harm exists where an injunction was not entered prior to the court's determination of the arbitrability of plaintiff's claims)); see also Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); Md. Cas. Co. v. Realty Advisory Bd. On Labor Rels., 107 F.3d 979, 984–85 (2d Cir. 1997) (finding that time and resources spent in arbitration are not compensable by monetary award under the Arbitration Act); Pension Plan for Pension Trust Fund for Operating Eng's v. Weldway Const., Inc., 920 F.Supp.2d 1034, 1041, 1049 (N.D. Cal. 2013) (collecting cases). The plaintiffs in Pension Plan argued, and the court agreed, that forcing the plaintiffs to incur the costs of preparing two separate procedural tracks, absent injunction, would irreparably injure plaintiffs. 920 F. Supp. 2d at 1041. Like the plaintiffs in Pension Plan, PGE will incur costs of engaging against Sureties in both trial and arbitration if the injunction is denied. Therefore, the Court agrees with PGE that it would suffer irreparable harm.

The Court primarily grants the preliminary injunction based on its determination of the likelihood of success on the merits and the likelihood of irreparable harm. However, to the extent the balance of the equities is a factor, the Court finds it favors PGE because it would be

fundamentally unfair to require PGE to arbitrate a dispute when it never agreed to submit such dispute to arbitration. For the same reason, public interest favors granting the injunction. See Comer v. Micor, Inc., 436 F. 3d 1098, 1104 n. 11 (9th Cir. 2006) (declining to apply the liberal federal policy favoring arbitration where the question is whether a party is bound to arbitration instead of whether a particular issue is arbitrable).

**CONCLUSION**

The Court denies Sureties' motion to stay [13] and grants PGE's motion for a preliminary injunction [17].

IT IS SO ORDERED.

Dated this 27 day of July, 2016.

Marco Hernández
MARCO A. HERNÁNDEZ
United States District Judge